**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **CURTISTINE JOHNSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:07-0944** |
| | ) | |
| **HARLEY LAPPIN, Director,** | ) | |
| **Federal Bureau of Prisons,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending are the following Motions: (1) The United States' "Motion to Dismiss Defendants Harry Lappin, Amber Nelson, Deborah Hickey and the Health Services Unit Staff (Neal Rehberg, D.O., Nurse Elmore and Nurse Renick) and Substitute the United States" (Document No. 10.), filed on October 18, 2010; (2) The United States' "Amended Motion to Dismiss Defendants Harry Lappin, Amber Nelson, Deborah Hickey and the Health Services Unit Staff (Neal Rehberg, D.O. and Nurse Elmore) and Substitute the United States" (Document No. 17.), filed on October 10, 2010; (3) The United States' Motion to Dismiss (Document No. 19.), filed on October 20, 2010; (4) Defendant Rehberg's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 23.), filed on November 4, 2010; (5) Defendant Roanoke Memorial Hospital Staff and Roanoke Memorial Hospital Director's "Motion to Dismiss for Failure to State a Claim" (Document No. 26.), filed on November 8, 2010; (6) Defendant Dana Renick's "Motion to Dismiss Complaint" (Document No. 28.), filed on November 8, 2010; and (7) Defendant "Greenbrier Valley Medical Center Director and Greenbrier Valley Medical Center Staff's Motion to Dismiss Complaint" (Document No. 34.), filed December 8, 2010. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file responses to the United States and Defendants'

Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by the United States and Defendants in moving to dismiss. (Document Nos. 16, 22, 25, 31, and 35.) Plaintiff has failed to file a Response to the United States or Defendants' Motions. Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court deny as moot the United States' "Motion to Dismiss Defendants Harry Lappin, Amber Nelson, Deborah Hickey and the Health Services Unit Staff (Neal Rehberg, D.O., Nurse Elmore and Nurse Renick) and Substitute the United States" (Document No. 10.), grant the United States' "Amended Motion to Dismiss Defendants Harry Lappin, Amber Nelson, Deborah Hickey and the Health Services Unit Staff (Neal Rehberg, D.O. and Nurse Elmore) and Substitute the United States" (Document No. 17.), grant the United States' Motion to Dismiss (Document No. 19.), grant Defendant Rehberg's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 23.), grant Defendant Roanoke Memorial Hospital Staff and Roanoke Memorial Hospital Director's "Motion to Dismiss for Failure to State a Claim" (Document No. 26.), grant Defendant Dana Renick's "Motion to Dismiss Complaint" (Document No. 28.), and grant Defendant "Greenbrier Valley Medical Center Director and Greenbrier Valley Medical Center Staff's Motion to Dismiss Complaint" (Document No. 34.).

## PROCEDURAL HISTORY

On December 17, 2007, Plaintiff, acting *pro se* and incarcerated at FPC Alderson, filed a "Complaint of Tort Liability."[1] (Document No. 1.) Plaintiff names the following as Defendants: (1) Harley Lappin, Director of Federal Bureau of Prisons; (2) Amber Nelson, Warden of FPC Alderson;

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

2

(3) Deborah Hickey, former Warden of FPC Alderson; (4) Health Services Unit Staff; (5) Greenbrier

Valley Medical Center Director; (6) Greenbrier Valley Medical Center Staff; (7) Roanoke Memorial

Hospital Director; and (8) Roanoke Memorial Hospital Staff. (Id.) Plaintiff alleges that Defendants

acted with deliberate indifference to her serious medical needs, which resulted in the premature birth

and subsequent death of her baby. (Id.) Specifically, Plaintiff states as follows:

> I, Curtistine Johnson, arrived at Alderson Federal Prison Camp on January 7, 2005. I was pregnant, but did not know it until I arrived at Alderson. I was medically cleared and assigned to Central Dining Room (CDR) for a job until May 8, 2005. My job consisted of standing to wipe and clear tables after each person ate, mopping, sweeping, serving food to other inmates as dictated by officers in charge. In April 2005, I began to have symptoms of dizziness, blurred visions, and nausea. An officer notified D.O. Rehberg (doctor of osteopathic), Chief Medical Director. On or about April 26, 2005, after going to sick call at HSU (health services unit) several times, I was moved from the top bunk to lower bunk, to the bottom level housing unit because of medical restrictions. One week later, I was moved back upstairs on the 2nd floor of the housing unit by Cynthia Godbold, Unit Manager for A building. This move required that I walk up and down approximately 20 steps (2 flights) for meals, commissary, education, psychology, and administration building, etc.
>
> On or about May 23, 2005, at 9:00 a.m., I began to have contractions and they continued. I went to HSU, Nurse Elmore, asking that she notify D.O. Rehberg that I was having contractions that had not subsided. However, Nurse Elmore, stated that I was "out of bounds" since I had failed to come to sick call (7:00 a.m.), which would result in an incident report to administration. I informed her that the contractions did not start until 9:00 a.m. Nurse Elmore then told me to sit down in the waiting room while she spoke to D.O. Rehberg. After speaking to D.O. Rehberg, Nurse Elmore, put me in an exam room to wait for Rehberg. She then took my vital signs, asking how much water I had been drinking? I responded about 64 oz a day. She then advised me that I needed to drink more water, stating that "the contractions may be from lack of water." D.O. Rehberg came into the exam room where he again checked my blood pressure then proceeded to question me about the "contractions." He asked if I had other pregnancies, and other children. I advised D.O. Rehberg that the contractions were about 4 minutes apart, that I knew what "contractions" were. He decided to wait for the next contraction, then advised me to 'drink more water, the contractions will stop." The contractions continued throughout the day and night, I returned to HSU for sick call the following morning. Nurse Renick came by after I had been waiting in the waiting room for quite sometime. I had decided to speak to her since she was the nurse who took care of OB/GYN at Alderson, FPC. She then took me into an exam room to check my cervix. Nurse Renick stated "she wasn't sure if my cervix was dilated since the cervix is "high." Nurse Renick took a urine sample, since she stated that a UTI (urinary tract infection) could sometimes cause contractions. Nurse Renick stated that she saw "traces of something" and prescribed cephalexin 500 mg.

I returned to the housing unit to lay down. The contractions continued and worsened throughout and I returned to HSU and waited for someone to check me. Another inmate went to get Nurse Renick since I was in severe pain with the contractions. I stated to Nurse Renick that the pain was unbearable. She then decided to check me again. Renick stated at this point that I had dilated to 5 and rushed out of the exam room to get help. She was wearing bloody gloves, which indicated to me that I needed to get somewhere for help. The staff then rushed to call an ambulance and started IVs. During this time, one of the nurses stated that they did not have the medication needed to slow the contractions down. I then had to wait for the ambulance to get to the camp to transport me to Greenbrier Valley Medical Center. After arriving at the Greenbrier Medical Center, I was rushed to what I understood to be L&D (labor and delivery) where I was advised that I needed an emergency C-section because the baby was "in trouble." When I woke up from the sedation and surgery, the doctor explained that after the baby was born that Greenbrier Valley Medical Center did not have the specific medication needed for the baby, that there were complications with my baby's breathing, and that he would be transported to Roanoke Memorial Hospital as soon as possible. He then stated that he would have a nurse to bring my baby in so that I could see him before he was transported to Roanoke Memorial. The first report I received from the doctor at Roanoke Memorial was that the baby was doing well. Later when someone called me back, however, I was asked whether I wanted to keep my baby on life support or not. At this point I realized my baby was having trouble. I am assuming that the doctor was the person who called me later and stated my baby had died.

(Id., pp. 3 - 5.) Plaintiff therefore contends that Defendants' failure to provide adequate medical care resulted in cruel and unusual punishment. (Id., p. 7.) Plaintiff claims "this heinous event has caused a slow mental decline, which affects the Plaintiff's life, quality of life, and lifestyles, and will continue to do so in the future, and in fact for the duration of her lifetime." (Id., p. 8.) Plaintiff requests monetary relief. (Id., p. 7.)

By Order entered on September 21, 2010, the undersigned determined that Plaintiff stated cognizable claims pursuant to Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (Document No. 3.) Although Plaintiff stated a cognizable claim under Bivens, the Court determined that Plaintiff had neither paid the filing fee nor submitted an Application to Proceed *in forma pauperis* or Without Prepayment of Fees. (Id.) Therefore, the Court ordered that Plaintiff pay the Court's filing fee or submit an Application to

Proceed *in forma pauperis* or Without Prepayment of Fees in conformity with 28 U.S.C. § 1915 within twenty (20) days from the date of the Order. (Id., p. 5.) On October 7, 2010, Plaintiff filed her Application to Proceed *in forma pauperis,* which the Court deemed acceptable. (Document No. 4.) By Order entered on October 8, 2010, the undersigned granted Plaintiff's Application to Proceeding Without Prepayment of Fees. (Document No. 5.)

On October 18, 2010, the United States' filed a "Motion to Dismiss Defendants Harry Lappin, Amber Nelson, Deborah Hickey and the Health Services Unit Staff (Neal Rehberg, D.O., Nurse Elmore and Nurse Renick) and Substitute the United States" and Memorandum in Support. (Document Nos. 10 and 11.) The United States argues that "[a]ssuming the plaintiff has a cognizable claim of negligence, that claim must be brought against the United States pursuant to the terms and conditions of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 et seq, based on the United States Attorney's Certification, defendants Harry Lappin, Amber Nelson, Deborah Hickey and the Health Services Unit Staff (Neal Rehberg, D.O., Nurse Elmore and Nurse Renick) were at the relevant times acting within the scope of their office or employment at the time of the incident out of which the claim arose." (Document No. 11, pp. 1 - 2.) To the extent that Plaintiff has stated a negligence claim, the United States argues that Defendants Harry Lappin, Amber Nelson, Deborah Hickey and the Health Services Unit Staff (Neal Rehberg, D.O., Nurse Elmore and Nurse Renick) should be dismissed as Defendants and the United States be substituted in their place. (Id., pp. 3 - 4.) In support of the Motion, the United States attaches a "Certification" by the United States Attorney. (Document No. 10-1.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on October 19, 2010, advising her of the right to file a response to the United States' Motions to Dismiss. (Document No. 16.)

On October 20, 2010, the United States' filed an "Amended Motion to Dismiss Defendants

Harry Lappin, Amber Nelson, Deborah Hickey and the Health Services Unit Staff (Neal Rehberg, D.O. and Nurse Elmore) and Substitute the United States"[2] and Memorandum in Support. (Document Nos. 17 and 18.) To the extent Plaintiff has stated a negligence claim, the United States argues that Defendants Harry, Lappin, Amber Nelson, Deborah Hickey and the Health Services Unit Staff (Neal Rehberg, D.O. and Nurse Elmore) should be dismissed as defendants and the United States be substituted in their place. (Document No. 18, pp. 3 - 4.) In support of the Motion, the United States attaches a "Certification" by the United States Attorney. (Document No. 17-1.)

Also, on October 20, 2010, the United States filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 19 and 20.) The United States argues that Plaintiff's Complaint should be dismissed because (1) her claims are untimely, and (2) she failed to comply with the MPLA. (Id.) In support, the United States attaches as Exhibits: (1) A copy of the "Administrative Tort Claim Tracking Sheet" concerning Tort Claim No. TRT-MXR-2007-04254 (Document No. 19-1, p. 2.); (2) A copy of the United States Department of Justice's denial letter dated June 13, 2007, regarding Tort Claim No. TRT-MXR-2007-04254 (Id., p. 3.); and (3) A copy of Plaintiff's "Claim for Damage Injury, or Death" dated May 23, 2005 (Tort Claim No. TRT-MXR-2007-04254) (Id., pp. 4 - 13.). Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on October 21, 2010, advising her of the right to file a response to the United States' Motions to Dismiss. (Document No. 22.)

On November 4, 2010, Defendant Rehberg filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Memorandum in Support. (Document Nos. 23 and 24.) Defendant

---

[2] The Court notes that the United States' Amended Motion excludes Nurse Renick. The United States notes that "Nurse Renick, who was named in the Motion to Dismiss (Docket 10), was an independent contractor at the relevant time period." (Document No. 17, p. 1., fn. 1.)

argues that Plaintiff's Complaint should be dismissed because (1) "Plaintiff's <u>Bivens</u> claim is time

barred" (Document No. 24, pp. 3 - 4.); and (2) "Plaintiff has failed to exhaust her administrative

remedies required by the Prison Litigation Reform Act" (<u>Id.</u>, pp. 4 - 6.). Regarding Defendants Nelson,

Hickey, Elmore, and Lappin, defense counsel notes as follows:

> [T]he attempt to serve process on Defendants Nelson, Hickey, and Elmore was
> returned as undeliverable. The attempt to serve Defendant Lappin is improper as it was
> served by certified mail (not restricted delivery) to his work address and thus not in
> compliance with Fed. R. Civ. P. 4 (Docket 12). . . In the event that service is perfected
> on Defendants Nelson, Hickey, and Lappin, the Department of Justice representation
> of them is approved, the defense raised by Defendant Rehberg herein would also be
> applicable to them.[3]

(Document No. 23, p. 1, fn. 1.) In support, Defendant Rehberg attaches the following Exhibits: (1) The

"Declaration of Sharon Wahl" (Document No. 23-1, pp. 1 - 2.); (2) A copy of Plaintiff's "Relevant

Medical Records" (<u>Id.</u>, pp. 4 - 7.); (3) A copy of Plaintiff's "Inmate History" (<u>Id.</u>, p. 9.); and (4) A

copy of Plaintiff's "Administrative Remedy History" (<u>Id.</u>, p. 11.). Notice pursuant to <u>Roseboro v.

Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on November 5, 2010, advising her of

the right to file a response to Defendant Rehberg's Motion to Dismiss, or in the Alternative, Motion

for Summary Judgment. (Document No. 25.)

On November 8, 2010, Defendant Roanoke Memorial Hospital Staff and Roanoke Memorial

Hospital Director filed a "Motion to Dismiss for Failure to State a Claim" and Memorandum in

Support. (Document Nos. 26 and 27.) Defendant argues that Plaintiff's Complaint must be dismissed

based on the following: (1) "Plaintiff cannot assert an *Estelle v. Gamble* claim against Roanoke

Memorial because there is no action under color of state law" (Document No. 27, pp. 4 - 6.); (2)

"Plaintiff cannot assert an *Estelle v. Gamble* claim against Roanoke Memorial because there was no

---

[3] Although Plaintiff is proceeding *pro se* and *in forma pauperis*, the Court finds that it is her
responsibility to ensure proper service of process.

deliberate indifference to the serious medical needs of the Plaintiff" (Id., pp. 6 - 8.); (3) "Plaintiff cannot assert a *Bivens* claim against Roanoke Memorial because it is private entity" (Id., pp. 8 - 9.); (4) "Plaintiff's claims against Roanoke Memorial violate the West Virginia Code § 55-7B-6 Notice of Claim Prerequisite to Litigation" (Id., pp. 9 - 10.); and (5) "Plaintiff's claims against Roanoke Memorial are outside the statute of limitations and must be dismissed" (Id., pp. 10 - 11.).

Also, on November 8, 2010, Defendant Dana Renick filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 28 and 29.) Defendant Renick asserts that Plaintiff's Complaint should be dismissed based on the following: (1) "Plaintiff's Complaint does not allege any conduct on the part of Ms. Renick that arises to the level of a Constitutional deprivation of her rights" (Document No. 29, pp. 1 - 2.); (2) "Plaintiff fails to state a claim upon which relief can be granted under *Bivens* jurisprudence" (Id., pp. 2 - 3.); (3) "Plaintiff's claims neither pleads, nor meets the legal threshold for a viable Eighth Amendment/Fourteenth Amendment claim" (Id., pp. 3 - 6.); (4) "Plaintiff's claim should be dismissed for failure to comply with the pre-suit requirements of the West Virginia MPLA" (Id., pp. 6 - 8.); (5) "Plaintiff's claims should be dismissed because Renick is not a government actor, or in the Alternative, Plaintiff's claim should be dismissed for failure to exhaust all administrative remedies as required by law" (Id., pp. 8 - 10.); and (6) "Plaintiff's claim should be dismissed as untimely within the terms of W. Va. Code § 55-7b-4(a)" (Id., pp. 10 - 11.). Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on November 9, 2010, advising her of the right to file a response to Defendants Roanoke Memorial Hospital and Defendant Renick's Motions to Dismiss. (Document No. 31.)

On December 8, 2010, Defendant Greenbrier Valley Medical Center Director and Greenbrier Valley Medical Center Staff filed a Motion to Dismiss Complaint. (Document No. 34.) Defendants argue as follows: (1) "Plaintiff did not follow the pre-suit notification requirements outlined in the

Medical Professional Liability Act" (Id., pp. 2 - 3.); (2) "Plaintiff failed to obtain a screening certificate of merit" (Id., pp. 3 - 4.); and (3) "Plaintiff did not meet the statute of limitations as required by the Medical Professional Liability Act" (Id., p. 4.). Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on December 9, 2010, advising her of the right to file a response to Defendants' Motion to Dismiss. (Document No. 35.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the

moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

1.   **FTCA Claim:**

   A.   *The United States as a Party.*

In its Amended Motion, the United States argues that Defendants Lappin, Nelson, Hickey, Rehberg, and Elmore should be dismissed and the United States substituted as the Defendant regarding Plaintiff's negligence claim. (Document No. 17.) In support, the United States Attorney filed a "Certification" stating that Defendants "were acting within the scope of their employment as employees of the United States at the time of the incident out of which the claim arose." (Document No. 17-1.) Plaintiff failed to file a Response.

The Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq.*,

10

authorizes suits against the United States for damages for injuries or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. The FTCA provides at 28 U.S.C. § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Inmates may file claims of liability against the United States but may not assert claims of personal liability against prison officials for violations of their constitutional rights under the FTCA. Carlson v. Green, 446 U.S. 14, 21 - 23, 100 S.Ct. 1468, 1472 -74, 64 L.Ed.2d 15 (1980). In order to maintain a case against the United States under the FTCA, Plaintiff must demonstrate that her action is permissible under the FTCA and satisfies the necessary elements of a tort claim cognizable under law of the State in which the action accrued.

The United States attaches a "Certification" by the United States Attorney stating that "[o]n the basis of the information now available with respect to the allegations referred to therein, Harry Lappin, Amber Nelson, Deborah Hickey and the Health Services Unit Staff (Neal Rehberg, D.O. and Nurse Elmore), were acting within the scope of their employment as an employee of the United States at the time of the incident out of which the claim arose." (Document No. 17-1.) A United States Attorney's certification "is conclusive unless challenged."[4] Gutierrez de Martinez v. Drug Enforcement

---

[4]  Title 28 U.S.C. § 2679(d)(1) provides as follows:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim is a United

Admin., 111 F.3d 1148, 1153 (4th Cir. 1997). "When the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." Id.; Also see Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997). In determining whether certification is proper, the Court reviews the question *de novo*. Gutierrez, 111 F.3d at 1154. The plaintiff must present "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." Id. at 1155. If the plaintiff presents evidence satisfying her burden of proof, the defendant may come forward with evidence in support of the certification. Id. The Court reviews the "certification, the pleadings, the affidavits, and any supporting documentary evidence" for issues of material fact. Id. "Only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and evidentiary hearing." Id. In determining whether a federal employee was acting within the scope of his or her employment, the Court applies the law of the state where the conduct occurred. Id. at 1156(citing Jamison v. Wiley, 14 F.3d 222, 227 n. 2 (4th Cir. 1994).

Plaintiff has not filed a Response challenging the United States' "Certification." As stated above, a United States Attorney's certification "is conclusive unless challenged." The undersigned, therefore, recommends that the "United States' Amended Motion to Dismiss Defendants Harry Lappin, Amber Nelson, Deborah Hickey and the Health Services Unit Staff (Neal Rehberg, D.O. and Nurse Elmore) and Substitute the United States of America" (Document No. 17.) be granted as to Plaintiff's FTCA claim.

---

States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

**B.**     *Failure to satisfy the requirements of the MPLA.*

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

In the present case, Plaintiff alleges that Defendants' negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6.[5] Compliance with West Virginia Code § 55-7B-6 is mandatory prior to filing suit in federal court.

---

[5]  West Virginia Code § 55-7B-6 provides the following in pertinent part:

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in

Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

Plaintiff alleges that federal employees at FCP Alderson acted with medical negligence in providing medical treatment during her pregnancy.[6] In its Motion to Dismiss, the United States contends that Plaintiff's claim should be dismissed because she failed to timely and properly file a notice of claim and a screening certificate of merit pursuant to the MPLA. (Document No. 19.) Plaintiff failed to file a Response.

---

litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

[6] Additionally, Defendants Roanoke Memorial Hospital Staff, Roanoke Memorial Hospital Director, Dana Renick, Greenbrier Valley Medical Center Director, and Greenbrier Valley Medical Center Staff argue that Plaintiff has failed to comply with the requirements of the MPLA. (Document No. 27, pp. 9 -10, Document No. 29, pp. 6 - 8, and Document No. 34, pp. 2 - 3.) To the extent Plaintiff is attempting to proceed with a negligence claim, the undersigned concludes that Defendants' argument has merit.

Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, <u>Roberts v. Gale</u>, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." <u>Farley v. Shook</u>, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. <u>Id.</u> The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." <u>Id.</u> at 858.

Unlike the facts in <u>Johnson</u>, Plaintiff's allegations of medical negligence are complex and expert testimony is necessary. See <u>O'Neil v. United States</u>, 2008 WL 906470 (S.D.W.Va. Mar. 31, 2008)(finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and

cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience). In the instant case, it appears that the medical staff at FCP Alderson evaluated and provided treatment during Plaintiff's pregnancy. Plaintiff, however, contends that medical staff provided inadequate medical treatment during her pregnancy, which resulted in the premature birth and subsequent death of her baby. Expert testimony is necessary to support any finding that the medical treatment provided by the staff at FCP Alderson fell below the applicable standard of care. The undersigned finds that the risk factors, symptoms, methods of prevention, and proper treatment options for premature labor, are not within the understanding of lay jurors by resort to common knowledge and experience. Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c). The undersigned, therefore, recommends that Plaintiff's FTCA claim be dismissed because there is nothing in Plaintiff's Complaint indicating that Plaintiff complied with the requirements of West Virginia Code § 55-7B-6.[7]

**2.      Bivens Claim:**

   **A.      *Statute of Limitations*.**

   A Plaintiff must file a Bivens action within the prescribed time period. Because there is no federally prescribed statute of limitation, Courts look to and apply their respective state's statutes of limitation. See Wilson v. Garcia, 471 U.S. 261, 266-69, 105 S.Ct. 1938, 1942-43, 85 L.Ed.2d 254 (1985). Under West Virginia law, the applicable period of limitation upon Plaintiff's right to file this civil action was two years from the time the cause of action accrued. See W.Va. Code § 55-2-12(b).[8]

---

   [7] The undersigned finds it unnecessary to address the remaining issues the United States has presented for dismissal of Plaintiff's FTCA claim.

   [8] West Virginia Code § 55-2-12 provides as follows:

   Every personal action for which no limitation is otherwise prescribed shall be brought:

Although the limitation period is borrowed from state law, the question of when a cause of action accrues is answered according to federal law. See Brooks v. City of Winston-Salem, NC, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to her that reasonable inquiry will reveal her cause of action." Nasim v. Warden, MD House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)(*en banc*), cert. denied, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996)(citing United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). "Accrual of a claim does not 'await awareness by the plaintiff that his injury was negligently inflicted.'" Nasim, 64 F.3d at 955 (quoting, Childers Oil Co., Inc. v. Exxon Corp., 960 F.2d 1265, 1272 (4th Cir. 1992)). Accordingly, for a Bivens action, "a cause of action accrues either when the plaintiff has knowledge of her claim or when he is put on notice -- e.g., by the knowledge of the fact of injury and who caused it -- to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." Nasim, 64 F.3d at 955. To determine when a plaintiff possessed knowledge of his injury, the Court "may look to the common-law cause of action most closely analogous to the constitutional right at stake as an 'appropriate starting point.'" Brooks, 85 F.3d at 181 (citations omitted).

Federal Courts also apply the forum state's law regarding tolling, including equitable tolling, when not inconsistent with federal law. Hardin v. Straub, 490 U.S. 536, 537-39, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). In Irwin v. Dep't of Veteran's Affairs, 498 U.S. 89, 97, 111 S.Ct. 453, 458, 112

---

(a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

17

L.Ed.2d 435 (1990), the United States Supreme Court recognized that statutes of limitations in actions against the government are subject to a rebuttable presumption of equitable tolling. The Irwin Court stated that equitable tolling should apply in cases "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Id. Federal Courts have held that because the Prison Litigation Reform Act requires a prisoner to exhaust administrative remedies, the prisoner is entitled to equitable tolling of the applicable limitations period while he exhaust the remedies. See Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002); Brown v. Morgan, 209 F.3d 595 (6th Cir. 2000); Howard v. Mendez, 304 F.Supp.2d 632, 638 (M.D.Pa. 2004)(a Bivens case); Aguirre-Castillo v. United States, 2004 WL 594105 (N.D.Tex.)(a Bivens/FTCA case); Lopez v. S.C.D.C., 2007 WL 2021875 (D.S.C.)

In their Motions to Dismiss, Defendants argue that Plaintiff's Bivens claim should be dismissed as untimely. (Document No. 24, pp. 3 - 4, Document No. 27, pp. 10 - 11, Document No. 29, pp. 10 - 11, and Document No. 34, p. 4.) In her Complaint, Plaintiff contends that Defendants acted with deliberate indifference to her serious medical needs, which resulted in the premature birth and subsequent death of her baby. Plaintiff claims she started having contractions on May 23, 2005, and was not appropriately treated for her premature labor. The record reveals that Plaintiff was transported to the Greenbrier Medical Center on May 24, 2005, where her baby was born. Plaintiff's baby was then transported to the Roanoke Valley Medical Center, where he passed away on May 25, 2005. The Court, therefore, concludes that Plaintiff's cause of action accrued no later than May 25, 2005. Applying the West Virginia two-year statute of limitation, together with the federal standard of accrual, the undersigned finds that Plaintiff's cause of action expired on May 25, 2007, two-years from the date Plaintiff became aware of any injury resulting from Defendants' failure to provide appropriate

treatment for her premature labor and birth of her premature baby. Plaintiff filed her instant Complaint on December 17, 2007. Accordingly, the two-year statute of limitations has run as to Plaintiff's claim. The undersigned, therefore, recommends that Defendants' Motions to Dismiss (Document Nos. 23, 26, 28, and 34.) be granted.[9]

    **B.**    ***Exhaustion of Administrative Remedies.***

    Notwithstanding the above, the undersigned will consider whether Plaintiff properly exhausted her administrative remedies. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[10] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language

---

    [9]  The undersigned finds it unnecessary to address the remaining issues that Defendants have presented for dismissal of Plaintiff's claim.

    [10] 42 U.S.C. § 1997e(a) provides as follows:

    No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims she raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(overruled on other grounds), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The

plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that she has exhausted her administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which she did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted))

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected

21

if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Motion, Defendant Rehberg argues Plaintiff's claims must be dismissed based upon her failure to exhaust her administrative remedies. In support, Defendant Rehberg submits the Declaration of Ms. Sharon Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 23-1.) Ms. Wahl declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.,

p. 1.) Ms. Wahl explains that she also has access to inmates' medical records. (Id.) Specifically, Ms.

Wahl states as follows in her Declaration:

3.      Curtistine Johnson, Federal Register Number 26770-016, is a federal prisoner currently confined at the Federal Prison Camp in Alderson, West Virginia ("FPC Alderson").

4.      Institution records reveal inmate Johnson was transported from FPC Alderson to the hospital on May 24, 2005, and that her baby passed away 24 hours later.

5.      Inmate Johnson returned to FPC Alderson on May 27, 2005.

6.      A review of inmate Johnson's administrative remedy history shows she has never filed an administrative remedy with the BOP.

(Id.) Plaintiff failed to file a Response to Defendant Rehberg's Motion.

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly

exhaust her administrative remedies for Bivens purposes. Although Plaintiff filed an administrative

tort claim (Tort Claim No. TRT-MXR-2007-04254), the exhaustion requirements concerning FTCA

and Bivens actions differ.[11] Having examined the record, the Court finds that the administrative tort

claim filed by Plaintiff relates to the exhaustion of her FTCA claim, not her Bivens claim. Plaintiff

---

[11] Exhaustion requirements concerning FTCA and *Bivens* actions differ. *See Davis v. United States*, 2007 WL 3473275 (N.D.W.Va. Nov. 13, 2007); *Murphy v. Inmate Systems Management*, 2008 WL 793631 (S.D.W.Va. Mar. 20, 2008). Before an inmate can bring a claim under the Federal Tort Claims Act, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32. The administrative process which inmates must exhaust when they have complaints under the Federal Tort Claims Act is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. *Id.*, § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, *Id.*, §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, she may file suit in the District Court within six months of the mailing of the denial. *Id.*, § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

fails to produce any documents indicating that she exhausted her <u>Bivens</u> claim. Because Plaintiff failed to properly exhaust administrative remedies with respect to her claims in this matter, the undersigned concludes, and hereby respectfully recommends, that this matter should be dismissed.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY as moot** the United States' "Motion to Dismiss Defendants Harry Lappin, Amber Nelson, Deborah Hickey and the Health Services Unit Staff (Neal Rehberg, D.O., Nurse Elmore and Nurse Renick) and Substitute the United States" (Document No. 10.), **GRANT** the United States' "Amended Motion to Dismiss Defendants Harry Lappin, Amber Nelson, Deborah Hickey and the Health Services Unit Staff (Neal Rehberg, D.O. and Nurse Elmore) and Substitute the United States" (Document No. 17.), **GRANT** the United States' Motion to Dismiss (Document No. 19.), **GRANT** Defendant Rehberg's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 23.), **GRANT** Defendant Roanoke Memorial Hospital Staff and Roanoke Memorial Hospital Director's "Motion to Dismiss for Failure to State a Claim" (Document No. 26.), **GRANT** Defendant Dana Renick's "Motion to Dismiss Complaint" (Document No. 28.), **GRANT** Defendant "Greenbrier Valley Medical Center Director and Greenbrier Valley Medical Center Staff's Motion to Dismiss Complaint" (Document No. 34.), **DISMISS** Plaintiff's Complaint (Document No.1.) and remove this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United

States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 6, 2011.

R. Clarke VanDervort
United States Magistrate Judge